08cv2299
JUDGE PALLMEYER
MAG. JUDGE MASON

UNITED STATES I.___ __ __ _____ __ __ __ __ __ __

NORTHERN DISTRICT OF ILLINOIS

CHICAGO, ILLINOIS

RECEIVED

**NOTICE OF FILING**

APR 22 2008
Apr 22, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

## EMERGENCY MOTION TO FILE A COMPLAINT ON NEW DISCOVERY PURSUANT TO RULE 60(b) ON DUE PROCESS AND MANDATED RIGHTS IN EDUCATION DENIED

This Notice of Filing a Motion on Due Process Denied in Education was

submitted to the Clerk of the District Court  for appearance and hearing before the

Honorable Judge, as appointed, concerning the Complaint filed, as stated therein,

all parties duly informed of the premises, and hereby served on you.

April 22,  2008
DATE

_Bertie Pullen Weeker_
SIGNATURE CERTIFICATION

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## CHICAGO, ILLINOIS

### CERTIFICATE OF SERVICE

I, BETTIE PULLEN-WALKER, PRO-SE, HEREBY CERTIFY that on this day, the

22nd of April 2008, a true and correct copy of the foregoing Emergency Motion on New

Discovery and Due Process in Education Denied was filed with the Clerk of the Court

concerning a Complaint for an appearance and hearing before the Honorable Judge, as appointed,

and by United States Postal Service to the attorneys for defendants at their place of business, 3030

Salt Creek Lane, Suite 202, Arlington Heights, Illinois.


_April 22, 2008_
**DATE**                                    **SIGNATURE CERTIFICATION**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**CHICAGO, ILLINOIS**

| | | |
|---|---|---|
| **BETTIE PULLEN-WALKER** | ) | 08cv2299 |
| | | JUDGE PALLMEYER |
| Plaintiff/Appellant | ) | MAG. JUDGE MASON |
| vs. | ) | |
| | ) | |
| **ROOSEVELT UNIVERSITY, ROOSEVELT** | ) | **THE HONORABLE JUDGE:** |
| **UNIVERSITY BOARD OF TRUSTEES,** | ) | |
| Valerie Janesick, George Lowery, Antonia Potenza | ) | **RECEIVED** |
| Theodore Gross, Charles Middleton, Agents, | ) | |
| Employees, Attorneys | ) | APR 2 2 2008 |
| | ) | Apr 22, 2008 |
| Defendant/Appellees | ) | MICHAEL W. DOBBINS |
| | | CLERK, U.S. DISTRICT COURT |

**EMERGENCY MOTION TO FILE A COMPLAINT ON NEW DISCOVERY**
**PURSUANT TO RULE 60(b) ON DUE PROCESS AND MANDATED**
**RIGHTS IN EDUCATION DENIED**

**To:** Mr. Robert E. Swain and Steve Richart
    Attorney for the Defendants
    Hodges, Loizzi, Eisenhammer, Rodick, and Kohn
    3030 Salt Creek Lane #202
    Arlington Heights, Illinois 60005
        847/607-9000

Bettie Pullen-Walker, Pro-Se
745 East 84th Place (1S)
Chicago, Illinois 60619
  773/487-0084

 April 22, 2008
    **DATE**

**SIGNATURE CERTIFICATION**

## STATEMENT OF THE CASE

**This Emergency Original Civil Rights Complaint is filed pursuant to Rule 60(b) (2-6)**
**upon new discovery** of concealment and deception that revealed alteration of material facts, actual

identities of parties, and changed the contents of the case. In conflict with the Federal Rules of

Evidence, the issues have never been addressed, and the plaintiff has been denied due process and the

right to defense of issues filed in court.

The federal question arises in this case against discrimination by Roosevelt University, its Board

of Trustees, faculty, administrators, staff, and attorneys, upon violations of Supreme Court enactments

that guarantee student rights private higher education institutions using federal resources. Enrolled in

the College of Education, doctoral program, Education Leadership (ELOC), the plaintiff was falsely

charged by Dr. Valerie Janesick with avoidance of taking the final comprehensive exam and expelled on

pretense of academic reasons. [Eight years are standard nationwide for completion; only four expired].

In retaliation upon reinstatement, a campaign of abusive letters with outrageous charges and

name-calling was mounted by Dr. Janesick, newly employed and soon named chairman, graduate

advisor, and full professor. The plaintiff was disparaged by sexually abusive charges spread across

campus of using feminine wiles to obtain favoritism from male professors to succeed in the program;

overlooking or unconcerned about the 3.62 GPA earned in the doctoral, and 3.80 on leave in another

department. [This professor was subsequently found uncertified and unqualified for multiple positions,

as below. The university ending the negligence placement did not address the discrimination.]

[On good faith and information, with due process and the right to defense of claims denied, the

United States Attorney General was notified, as required.]

## PREJUDICE IN FAVOR OF THE DEFENDANTS

1. As res judicata from the underlying case, filed under Breach of Contract, a State claim, unknown

then as pro-se, and subsequently dismissed, the petitioner has been concerned that a judge in the underlying

case is on the University's Board of Trustees, and the petitioner as writer and publisher in previous years

years, is known to two of the judges. Under the circumstances, the question of prejudice in favor of the

defendants cannot be overlooked. A possibility of prejudice in favor of the parties, given administrative

discretion by the courts in academic and discipline matters, historically, appears to have bearing in the

harsh rulings imposed against the petitioner. University officials have claimed immunity for this reason.

> **Tedeschi v. Wagner College 49 N.Y. 2d; 661, 404 N.E.2; 1307, 427 N.Y. 2d; 765**
>
> **(1980)** *is cited as the precedent case in the concern of the Court to address decisions on student rights whether discipline or academic matters when lacking in fundamental fairness, demonstrate abuse of discretion, or offend the public interest.* Upheld in **Susan M. v. New York School of Law 76N.Y. 2d 241, 246. 556 N.E. 2d 1104, 557 N.Y. S. 2d 297,** *review when challenged determination is made in bad faith or contrary to Constitution or statute.*

    **2.** The enactment merits adherence in Illinois courts. Beyond the citations of Cannon (1979)

and Wison (1983), both cited below, the plaintiff could not find the cases upholding student rights in

Illinois jurisprudence. The most recent anti- discrimination matter of wide notice under Title IX, enacted

concerning education matters, has been a ruling for a female employee working in construction.

    **5.** Substantial legal claims have never been addressed as filed in court and, in particular, the

enactments of 20 U.S.C. § 1601 et seq., Title IX, the Education Amendment Act of 1974 which

invoked implicit cause of action, and mandate review under written notification and motivation

> *In an educational context, the action of the recipient must be demonstrably necessary to meeting important educational goals or educational necessity. The evidence must support the finding that the reason articulated by the recipient was not the true reason for the challenged action, and the real reason was discrimination based on sex.*

    **3.** This significant requirement establishing violation under Title IX, however, has been demonstrated

by the fact that expulsion during illness for alleged avoidance of examination, obviously, did not meet

an important educational goal or necessity. As above, the real reason for expulsion was discrimination

based on sex justified by manufacturing a false charge sexist charge to succeed, ignoring the academic

record, and portraying the plaintiff across campus as unsuitable and using feminine wiles to succeed.

2

**4.** The Office of Civil Rights notified of the controversy after expiration of statutory limitations of 180 days on expulsion from the College of Education for the alleged avoidance of examination. In the files obtained in discovery, the investigation revealed actions of staff members usurping academic authority, and the parties were described as motivated by personal animosity.

**5.** By any measure, any reasonable man would know that a person with a GPA at 3.62 far above department standards then established at 3.00 would not likely engage in avoidance of an exam. In addition, an untold number of people drop out of universities, whether for avoiding an exam or failing an exam, but under normal academic procedures are not subjected to expulsion for failure to take an exam during illness with an attorney engaged to obstruct continuance and completion. No evidence was presented in defense of the charge, or other discriminating actions of the defendant.

## NEW DISCOVERIES

The files were obtained from the Office of Civil Rights (OCR) in Discovery by the court appointed attorney. The reports revealed deception and concealment of material facts, and actual identities of parties that changed the contents of the case. Two instances of New Discovery are involved that were never addressed by the federal court.

**1.** New discovery, unknown for five years; three in litigation, revealed concealment of a 99 year hold posted on enrollment at university and filed in the academic record, that indicated motivation for intentional obstruction to taking the final exam and a premeditated plan for expulsion.

**2.** Two years later, another instance of discovery revealed ,as above, in reports by University officials, to OCR, alteration of material facts, and actual identities of parties that changed the case. Deception and concealment of records in violation of **Federal Rules of Evidence**; separating facts, parties, and cause of action never were reviewed in court. **The evidence from OPCR is documented in substantial detail.**

**3.** Appearing as a pro-se litigant, the claims and legal premises involved, unfortunately, could not be set forth with the exactness of the procedural matters of concern to the defendants. However, the

summons were not served in the underlying breach of contract case, and the presiding judge stated there was no federal jurisdiction. A preclusive effect of res judicata was not applicable in these proceedings

**4.** Primarily, students in private higher education are not subject to tort action, unlike students in state institutions, considered arms of government, and cannot invoke constitutional claims on violations of student rights. Instead, a private right of action, denied to the plaintiff, was legislated by the Supreme Court in the landmark case that embodies the aim of Congress:

> *Cannon v. University of Chicago, 441 U.S.677,704 ] (1979*): *Congress enacted*
> *"Title IX (1974) with two principle objectives in mind: to avoid the use of*
> *federal resources to support discriminatory practices in education programs,*
> *and to provide individual citizens effective protection against those practices.*

Legal opinion maintains the enactments have evolved over the years in court litigation and precedence:

(1) Due process of timely hearing and resolution considering academic schedules

(2) Avoidance of arbitrary, capricious decisions and abuse of discretion ,

(3) Fundamental fairness in proceedings,

(4) The right to witnesses among faculty and staff, or legal representation (without acrimony)

(5) Adherence to printed policy in compliance upon **institutions receiving federal resources**.

## BACKGROUND AND CAUSE OF ACTION

On pretense of academic reasons, Dr. Valerie Janesick, levied expulsion. The bona fide academic violations occurred among administrators in direct action against the plaintiff's academic progress:

**1** Cancellation of plaintiff's enrollment in the a new Higher Education strand [ awaited upon completion of all courses  and taking courses on leave],

**2. A** prior expulsion on interference in a professor's grading procedure  in this department, at variance with standard academic norms and university policy of certified notification, conference for possible resolution, the dean's decision in the matter, and timely resolution.

**3** The grade of "C"  involved was  an undeserved demotion and corrected,  yet had no bearing on status in the College of Education, with two C  grades allowed and GPA above 3.0  equivalent to B

4

**4 .** In addition  the cancellation of a conference planned as a field  study requirement described as personal use of facilities also interfered with academic progress.

**5.** Other students were given preferential treatment to increase male presence in teaching, and others allowed to graduate in Curriculum, the professor's area of qualifications, in which the University, however, holds no certification.  The plaintiff's participation, in contrast, was cancelled in the legitimate newly implemented Higher Education strand.

## THE CHAIRMANS CREEDENTIALS FOUND QUESTONED

**1.** Subsequently, the Chairman has been  found uncertified in Education Leadership as required in an area of placement in higher education and holding degrees, instead, in Theater, Broadcasting, and Curriculum. The lack of qualifications for the multiple leadership positions surely had bearing on the abusive, arbitrary capricious actions against the plaintiff, with unconcern for the discrimination involved. The university failed to take responsibility for these matters, as required on using federal resources.

## THE DEAN AND OTHER OFFICIALS FAILED TO END ABUSE

**1.** The dean, provost, academic administrator, and disability official notified did not intercede to end the chairman's discrimination and harassment, as required among university officials using federal resources.   The Dean, responsible for resolving the matter, brushed off petitions to end the abusive letters and the disparagement across campus, and responded at one point, "Don't answer her."  Upon Dr. Janesick's referral to the dean on April 18, 2001, however, the matter could have been resolved under adherence to university policy and, again,  prolonged litigation avoided

**2.** Grievances are required filed in the semester of occurrence, sent by certified notice stating cause, with conference following for possible resolution, and referral to the dean, if all efforts fail.  However, upon referral, expulsion was already imposed, and the dean relinquished authority to a staff  member , and escalated to the underlying breach of contract case. The source of the charges, false and convoluted in concealment and deception, were not accurately assessed by the plaintiff, until discovery. The harassment and discrimination, more than emotional distressful, have been cruel and unusual punishment.

5

**TITLE IX MANDATES REQUIRE REVIEW WITH FORCE OF LAW**

1. <u>Direct motivation,</u> the U.S. Department Education maintains, is difficult to uncover. In the instant case, however, there were overt actions of discrimination including a barrage of pen poison letters sent over seven (7) long months containing discriminating and denigrating sexual comments and made-up charges requiring time and attention  for response that interfered with academic progress.  A 99 year hold on enrollment revealed direct discrimination and premeditated intention for expulsion.

2. <u>Primae facie</u>  motivation as established by Congress shown in violation, as follows

- A member of the designated class.
- A hostile environment created
- No person should be denied participation in any program, activity, or any benefit
  .     by a higher education institution receiving federal resources
- Notification of officials with power to end the abuse and failed to do so
- Others in similarly situated circumstances treated more favorably or differently
- Pervasive harassment

3. The enactment merits adherence in Illinois courts.  Beyond Cannon (1979), and Wilson(1983) cited below, the cases establishing protection for student cannot be found in Illinois jurisdiction.   The most recent anti-discrimination ruling under Title IX was for a female employee in construction.

**FEDERAL FUNDS DOUBLE BILLED**

1.  The federal loan agency has extended a moratorium on the student loan; awaiting correction by the University, and the Court's intercession is needed in this matter. Without justice in this matter, issues can never be resolved.  The issue of double charging on the federal student loan that the Agency stated requires correction by the University also was overlooked.

2. The proof was submitted, as with other instances of abuse by the university substantiated by direct evidence and overlooked.   The Court is called upon to intercede in this matter, an important issue In the forefront nationally, and equally important in student rights.  Without the acknowledgement of court, this issue cannot be resolved equitably.

# ARGUMENT

## ARBITRARY CAPRICIOUS ACTIONS

**1.** Discrimination has occurred on pretense of academic reasons for no valid cause. Agency time-lines of 180 days had expired when the Office of Civil Rights (OCR) was notified of both false behavior charges and avoidance of taking the final exam, and expelled for these reasons. Advice was given that the only recourse was court action for the discrimination on the testing charge.

**2.** Agency investigation proceeded on the behavior violations charges, with complete unawareness by the petitioner. Under double expulsions, as stated by the Provost, on two separate grounds, yet unaware of another source for the complaint, and under emotional distress and confusion, the wrongful charges were the only certainty. The **Formal Complaint Statement** received listed false behavior charges alleged in classes almost two years previously, again, in conflict with policy stated of filing grievances in semester of occurrence led to the first case filed as breach of contract. Over the years, concealment and deception have not been looked upon favorably by the courts:

> It is appropriate to presume that where documents relevant to the merits of the litigation have been concealed the deception casts doubt on the concealing party's case. See, e.g.,Phoceene Sous-Marine, S.A., 682 F.2d at 806.. Thus, from deception regarding the documents "one may reasonably infer" that deceiver's "case is lacking in merit." Phoceene Sous-Marine, S.A., 682 F.2d at 806 (citing Hammond Packing Co. v. Arkansas, 212 U.S. 322, 349-54 (1909)).

**3.** These are the principles denied on filing this case and, guaranteed by the Civil Rights Reconstruction Act (CRRA) , also embodying protection under other anti-discrimination statutes. The landmark case, Cannon v. University of Chicago, gave embodiment to 15 U.S.C. §1601 et seq., Title IX, the Education Amendment Act enacted earlier by Congress, and upheld in various courts.

**4.** In the public interest, the purpose of the educational system is the betterment of human lives and, ultimately, for promoting the good of the nation. Institutions are entrusted in the public interest to uphold those principles. Central to the purpose is opportunity for students to pursue educational

7

goals with the expectation of fair and equitable evaluation and treatment in concern for student rights. The petitioner has been denied those rights and the Court is respectfully requested to grant relief.

 *In McConnell v. LeMoyne College, New York State Supreme Court, Onondaga County, Index No. 2005-2530. 56, (citation on LEXUS) the student was expelled upon completion of all courses for having a philosophy on student discipline different from the College, which brought the intervention of the N.Y. Higher Court for reversal.* The plaintiff had hoped the abuse of student rights in the instant case would merit full fair adjudication.

## ADVERSE ACTIONS ON PRETENSE OF ACADEMIC NORMS

1. Overall, as educators, guidance and support should have been expected upon completion of all courses in good standing, As in *Wilson v. Benedictine College, 112 Ill. App. 3d 932, 445 N.E.2d 901 (Ill.1983) adverse actions occurred on pretense of academic reasons.*

2. Other students were treated more favorably on obtaining benefits routinely due, and denied to Pullen-Walker; including obstruction to an Illinois Consortium grant specifically available to increase minority/ethnic employment in Higher Education employment. [A lawyer in the School Superintendent Law course on pretense of taking over when the professor retired, double graded every paper. Grades of A on every quiz, term paper, and final exam should have ended abuse, instead escalated to expulsion.]

## AN APPEAL IS MADE TO THE COURT TO PREVENT MANIFEST INJUSTICE

1. Relief from the discriminating action of faculty in the College of Education is deserved on the merits, now denied equal protection of the law for the opportunity to acquire the degree.

 *Pursuant to Rule 12(b)(6) in Hishon v.King and Spalding, 467 U.S. 69, 73 (1984) "dismissal is unduly harsh," and "the standard permits dismissal of a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations.*

2 . **As above, by** university policy, certified notice, conference for possible resolution, and referral to the Dean of the College of Education were policy procedures required, if resolution with the accuser involved failed, and by Supreme Court mandates. The professor refused to conference with the petitioner and the dean refused to address the matter. The referral to the dean four (4) months after expulsion even then was not honored as required by policy; and also as mandated under legal standards of due process.

3. The president's Academic Administrator and the director of the disability services office both responded abusively. Exam could have been rescheduled as stated university policy " to make up for work missed." The officials failed to follow procedures, and abetted the professors' discrimination. A manifest injustice in affront to the judicial system and the pubic interest would prevail if these decisions in error of law are allowed to stand.

4. There has been no recourse at law or relief for the petitioner. Instead, the *defendants have* successfully filed objections, without confirming evidence, that have had the full attention of the court. Without a shred of evidence to support the charge of avoidance of exam, or infractions of any kind against university procedures and policy, or defense of the discriminating behavior of the defendants, they prevailed in these arbitrary capricious actions and unlawful expulsion.

5. The Pro-se Litigant has responsibility to respond to opinions and rulings by the Court *"when the court has misunderstood the facts, the parties argument, or controlling law. "* **Rule 59, 4(a)(1)(A).** The courts, likewise, have responsibility to consider controlling laws and statutes, and on overlooking or misapprehending standards, justice is denied. The cases cited demonstrate precedence is established for this original Complaint. Review is warranted based on New discovery as a matter of law under standards of Federal Rules of Evidence and, above all, to prevent a manifest injustice

> The most egregious matter is that the petitioner faced similar circumstances as cited in *Fellheimer v. Middleburg College, 869 F. Supp. 238, 244-246 (D. Vt. 1994). The student was **given a hearing on one set of factors and other charges never reviewed were added and upheld. The administrative decisions were reversed by the court** .*

6. On matters which seemed so straightforward, the plaintiff has faced prejudice on every front. Overall, as educators, guidance and support should have been expected upon completion of all courses in good standing. As in *Wilson v. Benedictine College, **112 Ill. App. 3d 932, 445 N.E.2d 901 (Ill.1983)** adverse actions occurred on pretense of academic reasons.*

9

**7.** Other students were treated more favorably on obtaining benefits routinely due, and denied to Pullen-Walker; including obstruction to an Illinois Consortium grant specifically available to increase minority/ethnic employment in Higher Education employment. [A lawyer was placed in the School Superintendent's Law class on pretense of taking over when the professor retired. The plaintiff's grades of A on every quiz, term paper, and final exam should have ended the abuse, instead escalated to unlawful expulsion. Without acknowledgement of the court, the issue may never be resolved equitably.

**8.** Above all, the plaintiff was at a disadvantage upon withdrawal of the appointed attorney at a crucial stage of proceedings, and required to defend a Complaint amended beyond Title IX claims, specifically against the plaintiff's wishes. It was unconscionable that merely inquiring why the case should move to appeal before clarifying issues in District Court could be called "difference in strategy." Left without effective legal defense, the petitioner appearing pro-se has been discounted, for litigation never rose to the level of the claims filed. Due process and the right to defense of the issues filed in as guaranteed by the IIX Amendment to the Constitution, have been denied.

**9. Agency limitations, further, do not apply in Title IX cases, as follows:**

> *"Complainants filing cases under Title IX "are not subject to agency filing deadlines, exhaustion of administrative remedy requirements, and state referral requirements." Any financial assistance subjects a recipients to all four civil rights statues: (Title IX, Section 504, and the Age Discrimination Act).* (Department of Justice Title IX Manuel and the Department of Education Common Rule text. **F. Reg. 52867 (2000)** *110-_ .140)*

**10. As above, by** university policy, certified notice, conference for possible resolution, and referral to the Dean of the College of Education were policy procedures required, if resolution with the accuser involved failed. Exam could have been rescheduled as stated university policy " to make up for work missed." The officials failed to follow procedures, and abetted the professors' discrimination. A manifest injustice in affront to the judicial system and the pubic interest would prevail if these decisions in error of law are allowed to stand.

## CONCLUSION

**WHEREFORE**, the petitioner's has been discounted as a student in good standing under imposition of discriminating expulsion during illness resulting in emotional distress and injury, loss of career and productive years of life. The enactments against discrimination in private education by the Supreme Court and Congress have been usurped by unrelated standards, and the actions of premeditated discrimination overlooked. Student rights in private higher education, important nationally, have been diminished in the instant case, and will have wide adverse impact as precedence in other cases. The petitioner deserves justice on the merits upon expulsion for no reasonable cause; after four years, when 8 years are standard for completion of degree requirement and academic performance was far above departmental standards New discovery of deception and concealment required review as a matter of law and, in particular, on finding a 99 year hold on enrollment, and the case changed on alteration of the facts and identities of the parties.

For the reasons stated, the petitioner prays the Court will grant relief from the discriminating actions, on pretense of academic reasons, to prevent a manifest injustice. On the merits, the petitioner prays for reversal of expulsion and reinstatement to the university, statutory benefits as provided, and compensatory punitive damages as the Court deems just and proper.

Respectfully submitted,

Bettie Pullen-Walker

Date: _____April 21, 2008_____

11