MHW

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO, ILLINOIS

FILED
5-2-2008
MAY - 2 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**EMERGENCY MOTION TO FILE A COMPLAINT ON NEW DISCOVERY PURSUANT TO RULE 60(b) ON DUE PROCESS AND MANDATED RIGHTS IN EDUCATION DENIED**

08CV2299

**NOTICE OF MOTION**

You are hereby notified that this Emergency Motion on New Discovery Pursuant to Rule 60(b) on Due Process and Mandated ___May 8,___ at ___9:00___ A.M. at 219 South Dearborn, Chicago, Illinois for a hearing before the Honorable Judge ___John H. Darrah___, on an original Complaint on new ground concerning review of New Discoveries pursuant to Federal Rules of Evidence, as a matter of law, and other substantial legal claims requiring review under mandated rights, on faith and good information, enacted with the force of law, as stated therein, all parties duly informed of the premises, and hereby served on you.

___May 2, 2008___
**DATE**

_Bettie Patton-Hawks_
**SIGNATURE CERTIFICATION**

# MOTION FOR REVERSAL OF JUDGMENT BASED ON RES JUDICATA IN ERROR.

## STATEMENT OF THE FACTS

**This Emergency Civil Rights Complaint is filed pursuant to Rule 60(b) (2-6) upon new discovery** of concealment and deception that revealed alteration of material facts, actual identities of parties, and changed the contents of the case, and never addressed in conflict with Federal Rules of Evidence on finding of deliberate intent to deceive. The information was unavailable during briefing and with the issues filed in court denied due process, defense and trial requested, deprived of rights enacted by the Supreme Court and Congress to guarantee student rights in private higher education.

**JUDGMENT RENDERED WITHOUT MERIT**

1. Judgment rendered on **June 28, 2006** based on preclusive effect of res judicata was inapplicable in the case under review. The summons were never served in the underlying Breach of Contract case. The judge stated there was no federal jurisdiction. The motion timely-filed pursuant to Rule 59(c) on July 5, and amended July 7, 2006 within 10 days of judgment, and overlooked, extended time to appeal.

> *"If a party <u>timely files</u> in district court any of the following motions under "F.R.C.P., time to file an appeal runs for all parties from the entry of <u>the order disposing of the last such remaining order:</u> (iv) to alter or amend the judgment under Rule 59(e), or (vi) for relief under Rule 60 if the motion is filed no later than 10 days after judgment is entered."*

2. With abuse of discretion, and in error of law, F.R.C.P. Rule 1447 (c) also was overlooked. For these reasons, questions stand that Judgment rendered has no merit, and court proceedings were moot.

> *Pursuant to Rule 1447c, "when the summons is not served, and the presiding judge states there is no federal jurisdiction, there is no preclusive effect of res judicata, and any ruling before or after becomes moot for lack of jurisdiction as every court has authority to address," as upheld in Ansalve v. State Farm Mutual Insurance Co. 669S 2d 1328 (La Ct App., 1996).*

[On good faith and information, issues filed never addressed, and the plaintiff denied the right to due process and defense of claims in trial requested in the Complaint, in conflict with enactments of the Supreme Court and Congress, the United States Attorney General has been notified, as required.]

1

**6.** The guidelines stated for review by the Supreme Court have been violated in entirety in the instant case. The Court of Appeals upheld the rulings, resulting in miscarriage of justice, and in error of law: **(a)** in conflict with other courts on the same matter, **(b)** in departure from the accepted and usual course of judicial proceedings, **(c)** sanctioned departure by the District Court, and **(d)** decided important issues and claims in conflict with enactments of the Supreme Court. University officials failed adherence to their own policy, and abetted the discrimination. A manifest injustice in affront to the judicial system, plaintiff, and pubic interest will prevail if the decisions are allowed to stand.

**CAUSE OF ACTION**

**1.** Ever codified mandate violated under 20 U.S.C. § 1681 et seq.,Title IX, Education Amendment Act of 1974 invoked implicit cause of action, and was overlooked by the courts. Enrolled in the College of Education, doctoral program, Education Leadership (ELOC), the plaintiff was pervasively harassed by a barrage of abusive letters from Dr. Valerie Janesick over seven long months, and falsely charged with avoidance of taking final comprehensive exams and expelled during illness on pretense of of academic reasons. The action escalated to sexually abusive charges spread across campus of using feminine wiles to obtain favoritism from male professors to succeed in the program.

**2.** The professors were stated called from retirement, as found in discovery, to help the petitioner remain in the program, a far-fetched and ridiculous assumption on the face. The charges, totally false, were in contradiction to grade point average (GPA) at 3.62 on completion of all courses [and 3.80 in an added year of work in another department awaiting installation of a Higher Education strand for option on transition from high school teacher/counselor to college professor to extend working life].

**3.** The discrimination was abetted by other faculty, staff and attorneys involved. Dr. George Lowery, Dean of the College of Education, responsible for ending the abuse by university policy and specific Title IX mandate, and Dr. Antonia Potenza, Academic Administrator, given charge by the

2

university president to mediate the situation, was deliberately abusive instead, and other faculty, staff and attorneys were involved. [Eight years standard nationwide for completion; only four had expired.]

4. The federal question arises in this case against discrimination by Roosevelt University, its Board of Trustees, faculty, administrators, staff, and attorneys, upon violations of every mandate under Title IX as a private right of action for students in private higher education. The Claims filed were swallowed up in adjudication on unrelated matters or in conflict with controlling statutes, and never addressed in court.

**PREJUDICE IN FAVOR OF THE DEFENDANTS**

1. As res judicata from the underlying case filed under Breach of Contract, a State claim, then unknown as pro-se, and subsequently dismissed, the petitioner has been concerned that a judge in the underlying case is on the University's Board of Trustees, and the petitioner as writer and publisher in previous years years, is known to two of the judges. Under the circumstances, the question of prejudice in favor of the defendants cannot be overlooked. A possibility of prejudice in favor of the parties, given administrative discretion by the courts in academic and discipline matters, historically, appears to have bearing in the harsh rulings imposed against the petitioner. University officials have claimed immunity for this reason. However:

> **Tedeschi v. Wagner College 49 N.Y. 2d; 661, 404 N.E.2; 1307, 427 N.Y. 2d; 765 (1980)**
> *is cited as the precedent case in the concern of the Court to address decisions on student rights whether discipline or academic matters when lacking in fundamental fairness, demonstrate abuse of discretion, or offend the public interest.* Upheld in **Susan M. v. New York School of Law 76N.Y. 2d 241, 246. 556 N.E. 2d 1104, 557 N.Y. S. 2d 297,** *review when challenged determination is made in bad faith or contrary to Constitution or statute.*

2. The enactment merits adherence in Illinois courts. Beyond the citations of Cannon (1979) and Wilson (1983), both cited below, the plaintiff could not find the cases upholding student rights in Illinois jurisprudence. The most recent anti-discrimination matter of wide notice under Title IX [enacted to address education matters], has been a ruling for a female employed in construction.

3

3. Substantial legal claims have never been addressed as filed in court and, in particular, the enactments of 20 U.S.C. § 1601 et seq., Title IX, the Education Amendment Act of 1974 which invoked implicit cause of action, and require review under direct motivation and written notification.

> *In an educational context, the action of the recipient must be demonstrably necessary to meeting important educational goals or educational necessity. The evidence must support the finding that the reason articulated by the recipient was not the true reason for the challenged action, and the real reason was discrimination based on sex.*

4. This significant requirement establishing violation under Title IX, however, has been demonstrated by the fact that expulsion during illness for alleged avoidance of examination and a 99 year hold placed on enrollment, prior to expulsion, obviously, did not meet an important educational goal or necessity. As above, the real reason for expulsion was discrimination based on sex justified by manufacturing a false sexist charge, ignoring the academic record, and portraying the plaintiff across campus as nsuitable and using feminine wiles to succeed.

5. The Office of Civil Rights (OCR) was notified of the controversy after expiration of statutory imitations of 180 days on expulsion from the College of Education for alleged avoidance of exams. In the files obtained in discovery, the investigation revealed staff members assuming academic roles.

6. By any measure, any reasonable man would know that a person with a GPA at 3.62 far above department standards then established at 3.00 would not likely engage in avoidance of an exam. In addition, an untold number of people drop out of universities; whether for avoiding an exam or failing an exam, but under normal academic procedures are not subjected to expulsion for failure to take an exam during illness with an attorney engaged to obstruct continuance and completion. No evidence was presented in defense of the charge, or other discriminating actions of the defendant.

**NEW DISCOVERIES**

1. The files were obtained from the Office of Civil Rights (OCR) in Discovery by the court appointed attorney. The reports revealed deception and concealment of material facts, and actual

4

identities of parties that changed the contents of the case. Two instances of New Discovery are involved that were never addressed by the federal court.

2. New discovery, unknown for five years; three in litigation, revealed concealment of a 99 year hold posted on enrollment at university and filed in the academic record, that indicated motivation for intentional obstruction to taking the final exam and a premeditated plan for expulsion.

3. Two years later, another instance of discovery revealed, as above, in reports by University officials to OCR, alteration of material facts, and actual identities of parties that changed the case. Deception and concealment of records in violation of **Federal Rules of Evidence**; separating facts, parties, and cause of action never were reviewed in court. **The evidence from OCR is documented in substantial detail,** as shown in exhibits submitted, and informed by the docket section remain part of the permanent file.

4. Appearing as a pro-se litigant, the claims and legal premises involved, unfortunately, could not be set forth with the exactness of the procedural matters of concern to the defendants. However, the summons were not served in the underlying breach of contract case, and the presiding judge stated there was no federal jurisdiction. A preclusive effect of res judicata was not applicable in these proceedings.

5. Primarily, students in private higher education are not subject to tort action, and unlike students in state institutions, considered arms of government, and cannot invoke constitutional claims on violations of student rights. Instead, a private right of action was legislated by the Supreme Court in the landmark case, *Cannon v. University of Chicago, 441 U.S.677, 704 ] (1979* to ensure student rights in private higher education. The legislation included, in essence, the following mandates:

    (1) Due process of timely hearing and resolution considering academic schedules

    (2) Avoidance of arbitrary, capricious decisions and abuse of discretion,

    (3) Fundamental fairness in proceedings,

    (4) The right to witnesses among faculty and staff, or legal representation (without acrimony)

    (5) Adherence to printed policy in compliance upon **institutions receiving federal resources.**

5

The Supreme Court legislation is embodied in the aim of Congress:

> ***Cannon v. University of Chicago, 441 U.S.677,704 ] (1979)**: Congress enacted "Title IX (1974) with two principle objectives in mind: to avoid the use of federal resources to support discriminatory practices in education programs, and to provide individual citizens effective protection against those practices.*

## TITLE IX MANDATES ARE STATED REQUIRE REVIEW WITH FORCE OF LAW.

1. Adherence to mandates was ignored by the university and overlooked by the court on failure to Adjudicate the Title IX violations, and other claims on amendment under other anti-discrimination statutes.

2. Due process has been denied to a fair trial and defense of the issues filed in court, also as guaranteed by the Civil Rights Reconstruction Act For the reasons stated above and set forth fully below, the petitioner prays the Court will grant relief from this unreasonable expulsion, under arbitrary and capricious actions of discrimination, on pretense of academic reasons, to prevent a manifest injustice.

3. <u>Direct motivation</u>, the U.S. Department Education maintains, is difficult to uncover. In the instant case, however, there were overt actions of discrimination including a barrage of pen poison letters sent over seven (7) long months containing discriminating and denigrating sexual comments and made-up charges requiring time and attention for response that interfered with academic progress. A 99 year hold on enrollment revealed direct discrimination and premeditated intention for expulsion.

4. <u>Primae facie</u> motivation as established by Congress shown in violation, as follows
   - A member of the designated class.
   - A hostile environment created
   - No person should be denied participation in any program, activity, or any benefit by a higher education institution receiving federal resources
   - Notification of officials with power to end the abuse and failed to do so
   - Others in similarly situated circumstances treated more favorably or differently
   - Pervasive harassment

6

## BACKGROUND TO THE ACTION

On pretense of academic reasons, Dr. Valerie Janesick, levied expulsion against the plaintiff. Instead, the actual academic violations occurred among administrators.

1 Cancellation of plaintiff's enrollment in a new Higher Education strand [awaited upon completion of all courses and taking courses on leave by permission],.

2. A prior expulsion on interference in a professor's grading procedures in this department, at variance with standard academic norms and university policy of certified notification, conference for possible resolution, the dean's decision in the matter, and timely resolution.

3 The grade of "C" involved was an undeserved demotion and corrected, yet had no bearing on status in the College of Education, with two C grades allowed and GPA at 3.62 above department requirements of 3.0 equivalent to B.

4 . In addition the cancellation of a conference planned as a field study requirement described as personal use of facilities also interfered with academic progress.

5. Other students were given preferential treatment to increase male presence in teaching, and others allowed to graduate in Curriculum, the professor's area of qualifications, in which the University, however, holds no certification. The plaintiff's participation, in contrast, was cancelled in the legitimate newly implemented Higher Education strand.

6. In retaliation upon reinstatement, a campaign of abusive letters with outrageous charges and name-calling was mounted by Dr. Janesick, newly employed and soon named chairman, graduate advisor, and full professor. [This professor was subsequently found uncertified and unqualified for multiple positions, as below. The university ending the negligent placement did not address the discrimination.]

## THE CHAIRMANS CREDENTIALS FOUND QUESTONED

1. Subsequently, the Chairman has been found uncertified in Education Leadership as required in an area of placement in higher education and holding degrees, instead, in Theater, Broadcasting, and Curriculum. The lack of qualifications for the multiple leadership positions surely had bearing on the abusive, arbitrary capricious actions against the plaintiff, with unconcern for harm and discrimination involved. The university failed to take responsibility for these matters by policy and Title IX mandates.

7

**THE DEAN AND OTHER OFFICIALS FAILED TO END ABUSE**

1. The dean, provost, academic administrator, and disability official notified did not intercede to end the chairman's discrimination and harassment, as required among university officials using federal resources. The Dean, responsible for resolving the matter, brushed off petitions to end the abusive letters and the disparagement across campus, and responded at one point, "Don't answer her." Upon Dr. Janesick's referral to the dean on April 18, 2001, late nevertheless, and exonerating herself, the matter could have been resolved on adherence to university policy and unwarranted litigation avoided.

2. Grievances are required filed in the semester of occurrence, sent by certified notice stating cause, with conference following for possible resolution, and referral to the dean, if all efforts fail. Exam could have been rescheduled as stated university policy " to make up for work missed." However, upon referral, expulsion was already imposed; the dean relinquished authority to a staff member, and the matter escalated to the underlying breach of contract case. The source of the charges, convoluted in concealment and deception, were not accurately assessed by the plaintiff, until discovery. Harassment and discrimination; more than emotional distressful, have been cruel and unusual punishment.

**FEDERAL FUNDS DOUBLE BILLED**

1. The federal loan agency has extended a moratorium on the student loan; awaiting correction by the University, and the Court's intercession is needed in this matter. Without justice in this matter, issues can never be resolved. The issue of double charging on the federal student loan that the Agency stated requires correction by the University also was overlooked.

2. The proof was submitted, as with other instances of abuse by the university substantiated by direct evidence and overlooked. The Court is called upon to intercede in this matter, an important issue in the forefront nationally, and equally important in student rights. Without acknowledgement of the court, this issue cannot be resolved equitably, and will stand as another instance of discrimination private higher education.

# ARGUMENT

**ARBITRARY CAPRICIOUS ACTIONS**

1. Discrimination has occurred on pretense of academic reasons for no valid cause. Agency time-lines of 180 days had expired when the Office of Civil Rights (OCR) was notified of both false behavior charges and avoidance of taking the final exam, and expelled for these reasons. Advice was given that the only recourse was court action for the discrimination on the testing charge.

2. Agency investigation proceeded on the behavior violations charges, with complete unawareness by the petitioner. Under double expulsions, as stated by the Provost, on two separate grounds, yet unaware of another source for the complaint, nd under emotional distress and confusion, the wrongful charges were the only certainty. The **Formal Complaint Statement** received listed false behavior charges alleged in classes almost two years previously, again, in conflict with policy stated of filing grievances in semester of occurrence, and resulted in filing the first case as breach of contract

3. In the public interest, the purpose of the educational system is the betterment of human lives and, ultimately, for promoting the good of the nation. Institutions are entrusted in the public interest to uphold those principles. Central to the purpose is opportunity for students to pursue educational goals with the expectation of fair and equitable evaluation and treatment in concern for student rights.

> *In McConnell v. LeMoyne College, New York State Supreme Court, Onondaga County, Index No. 2005-2530. 56, (citation on LEXUS) the student was expelled upon completion of all courses for having a philosophy on student discipline different from the College, which brought the intervention of the N.Y. Higher Court for reversal and reinstatement of the student..*

4. The plaintiff had hoped the abuse of student rights in the instant case would merit full fair adjudication. Instead, the petitioner has been denied those rights and the Court is respectfully requested to grant relief. The District Court overlooked Rule 304(a) on rendering judgment before all claims and issues were adjudicated.

*"A **de novo** standard applies upon filing a Rule 59(e) motion within 10 days of entry of judgment, and altering or amending a judgment is justified "to correct a clear legal error and to prevent a manifest injustice. A Rule 59(e) motion is appropriate when the court has misunderstood the facts, the parties argument, or controlling la*

5. The petitioner was concerned that the motion was not entitled "Pursuant to Rule 59(e)" as set forth in the opening paragraph. First referred to as "tracking back to," the judgment, instead, as in F.R.C.P., and upheld judicially:

*"A determination, however, as to whether a motion to reconsider should be deemed a motion to alter or amend the judgment depends upon the contents of the motion, not its title."* **Davis v. Lukart, 106 F.R.D.317, 318 (E.D.Va. 1984),** and *"when the court has misunderstood the facts, the parties argument, or controlling law."* **Rule 59 (e) 4(a)(1)(A).\**

6. The plaintiff could not set forth the claims with the exactness of the defendants' concerns about technical and procedural matters; the only concerns addressed, without evidence or defenses to a sham expulsion and egregious discrimination for no reasonable cause. Compliance with controlling laws and statutes was required as a matter of law and, in particular, the **Federal Rules of Evidence** concerning discovery of concealment and deception that changed the case

**ADVERSE ACTIONS ON PRETENSE OF ACADEMIC NORMS**

1. Overall, as educators, guidance and support should have been expected upon completion of all courses in good standing, As in *Wilson v. Benedictine College, 112 Ill. App. 3d 932, 445 N.E.2d 901 (Ill.1983) the student was expelled on pretense of academic reasons., when the parents refused to make a financial contribution to the institution.* In the instant case, the university would be unjustly enriched; all obligation met by the petitioner on promise of a degree and expelled on pretense of academic reasons.

2. Other students were treated more favorably on obtaining benefits routinely due, and denied to Pullen-Walker; including obstruction to an Illinois Consortium grant specifically available to increase minority/ethnic employment in Higher Education employment. [A lawyer in the School Superintendent course on pretense of taking over when the professor retired, double graded every paper. Grades

10

of "A" on every quiz, term paper, and final exam should have ended abuse, instead escalated to expulsion.] Without acknowledgement of the court, the issue may never be resolved equitably.

**AN APPEAL IS MADE TO THE COURT TO PREVENT THIS MANIFEST INJUSTICE**

1. Relief from the discriminating action of faculty in the College of Education is deserved on the merits, now denied equal protection of the law for the opportunity to acquire the degree.

*Pursuant to Rule 12(b)(6) in* **Hishon v.King and Spalding,** 467 U.S. 69, 73 (1984) *"dismissal is unduly harsh," and "the standard permits dismissal of a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations.*

2. There has been no recourse at law or relief for the petitioner. Instead, the *defendants have* successfully filed objections, without confirming evidence, that have had the full attention of the court. Without a shred of evidence to support the charge of avoidance of exam, in conflict with academic performance or infractions of any kind against university procedures and policy, or defense of the discriminating behavior of the defendants, they prevailed in acquiring approval for the arbitrary capricious actions and unlawful expulsion.

3. The Pro-se Litigant has responsibility to respond to opinions and rulings by the Court *"when the court has misunderstood the facts, the parties argument, or controlling law."* **Rule 59, 4(a)(1)(A).** The courts, likewise, have responsibility to consider controlling laws and statutes, and on overlooking or misapprehending standards, justice is denied. The cases cited demonstrate precedence is established for this original Complaint. Review is warranted based on New discovery as a matter of law under standards of Federal Rules of Evidence and, above all, to prevent a manifest injustice.

> The most egregious matter is that the petitioner faced similar circumstances as cited in *Fellheimer v. Middleburg College, 869 F. Supp. 238, 244-246 (D. Vt. 1994). The student was* ***given a hearing on one set of factors and other charges never reviewed were added and upheld. The administrative decisions were reversed by the court and the student reinstated.***

11

4. On matters which seemed so straightforward, on seeking the wisdom of the court for resolution, the plaintiff has faced prejudice on every front. Overall, as educators, guidance and support should have been expected upon completion of all courses in good standing in every semester of attendance, again, as shown on the transcript.

5. Above all, the plaintiff was at a disadvantage upon withdrawal of the appointed attorney at a crucial stage of proceedings, and required to defend a Complaint amended beyond Title IX claims, specifically against the plaintiff's wishes. It was unconscionable that merely inquiring why the case should move to appeal before clarifying issues in District Court could be called "difference in strategy." Left without effective legal defense, the petitioner appearing pro-se has been discounted. **Defenses were never addressed at level of claims discovered, and the Brief ordered with facts and parties changed.**

**Agency limitations, further, do not apply in Title IX cases, as follows:**

> *"Complainants filing cases under Title IX "are not subject to agency filing deadlines, exhaustion of administrative remedy requirements, and state referral requirements." Any financial assistance subjects a recipients to all four civil rights statues: (Title IX, Section 504, and the Age Discrimination Act).* (Department of Justice Title IX Manuel and the Department of Education Common Rule text. **F. Reg. 52867 (2000)** *110-_ .140)*

6. For the reasons stated, the petitioner prays the Court will grant relief from the discriminating actions, on pretense of academic reasons. On the merits, the petitioner prays for reversal of expulsion by the Court and reinstatement to the university, statutory benefits as provided, injunctive relief and compensatory punitive damages as the Court deems just and proper.

Respectfully submitted,

*Bettie Pullen-Walker*

Date: May 2, 2008                                                    Bettie Pullen-Walker